**IN THE UNITES STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KRISTOPHER LINDSAY, an individual, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> THE CITY OF CHICAGO, a municipal ) </br> Corporation, and RONALD KIMBLE, an ) </br> individual, ) </br> ) </br> Defendants. ) | Case No. |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Kristopher Lindsay, by his undersigned attorneys, for his complaint against Defendant City of Chicago and Defendant Ronald Kimble (collectively, "Defendants"), states as follows:

**NATURE OF THE ACTION**

1. Kristopher Lindsay ("Plaintiff"), a Chicago Police Officer, brings this action against Defendant The City of Chicago (the "City") and Defendant Lieutenant Ronald Kimble ("Kimble") for unlawful retaliation in violation of the First Amendment and the Illinois Whistleblower Act, 740 ILCS 174/1 *et. seq.* Plaintiff is a long-time resident of the City of Chicago and a 22-year veteran of the Chicago Police Department serving as a police officer. During the course of his employment, Defendants implemented mandatory quota requirements for police officers, including requirements that police officers issue specific number of traffic citations within a specified time period. Defendants retaliated against police officers who refused to abide by the mandatory quota requirements or failed to satisfy the quotas. Defendants considered whether

police officers satisfied the mandatory quota requirements in evaluating the police officer's performance and took adverse action against officers who failed to comply.

2. Illinois law expressly prohibits municipalities from implementing quotas requiring police officers to issue a specific number of traffic citations within a designated period of time. 65 ILCS 5/11-1-12. Illinois law also prohibits a municipality from comparing the number of citations issued by police officers for the purpose of evaluating performance. *Id.*

3. Plaintiff refused to comply with the Defendants' mandatory quota requirements because they violated Illinois law. Plaintiff also repeatedly complained about the Defendants' illegal quota requirements to Defendants and filed a complaint to report the unlawful conduct to the Bureau of Internal Affairs. Plaintiff engaged in protected activity under the First Amendment and the Illinois Whistleblower Act by disclosing and reporting Defendants' unlawful policy, of which he reasonably believed to violate federal, state or local laws or regulations in an administrative hearing or other proceeding, or to a government agency, and by refusing to follow Defendants' directions to engage in unlawful activity. When Plaintiff disclosed and reported Defendants' unlawful conduct, and when Plaintiff refused to follow Defendants' instructions to participate in such unlawful conduct, Plaintiff was subjected to unlawful retaliation in violation of the First Amendment, 28 U.S.C. § 1983, and the Illinois Whistleblower Act.

4. Defendants' unlawful conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages. Plaintiff seeks monetary damages, and declaratory, injunctive and equitable relief necessary to redress Defendant's violations of Section 1983 and the Illinois Whistleblower Act including attorneys' fees and costs.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff is an individual employed by the City as a police office at the Chicago Police Department. Plaintiff is a resident of Chicago, Illinois.

6. The City is a municipal corporation in Cook County, Illinois, organized under the laws of the State of Illinois.

7. Kimble is an individual employed by the City as a lieutenant with the Chicago Police Department. The City and Kimble are both Plaintiff's employer as defined by the Illinois Whistleblower Act.

8. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9. The Court has personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209(a) because this action arises from the Defendants' wrongful conduct substantially connected with the State of Illinois. Defendants' wrongful conduct took place in Cook County.

10. Venue is proper under 28 U.S.C. § 1391 because all of the parties reside in this District and because all of the conduct complained of occurred within this District.

## FACTS

11. Plaintiff was hired as a police officer by the City in January 2000 and is currently employed by the City as a police officer at the Chicago Police Department.

12. From 2021 to the present, Plaintiff has been repeatedly subjected to a hostile work environment, unfavorable terms and conditions of employment, diminished responsibilities and privileges, lost income, and false accusations regarding his performance, all in retaliation for

reporting Kimble and the City's unlawful implementation of quota requirements and refusing to participate in the unlawful quota requirements.

13. On or about February 1, 2021, Plaintiff received a verbal admonishment by Sergeant Strzechowski at Kimble's direction. Neither Sergeant Strzechowski nor Kimble had any valid or legitimate basis to admonish Plaintiff.

14. On or about February 2, 2021, Plaintiff was called into a meeting with Kimble regarding the admonishment. Kimble yelled and belittled Plaintiff while in front of Sgt. Strzechowski. After the meeting, in open public, Kimble yelled at Plaintiff from his desk, continuing to belittle and embarrass Plaintiff. Kimble then abruptly changed Plaintiff's assigned vehicle and moved his start time from his preferred 6 a.m. start time to 8 a.m., despite having no legitimate basis or reason for doing so. Plaintiff had been assigned to his vehicle and the 6:00 a.m. start time since 2017 without incident.

15. On or about February 9, 2021, Kimble summoned Plaintiff to his office to notify Plaintiff that he was subject to potential disciplinary action based on Kimble's false accusation that Plaintiff was allegedly disrespectful during a meeting. Plaintiff denied the accusations and requested that his union representative be present at the meeting. Kimble became enraged and denied Plaintiff's request and responded by yelling and screaming obscenities and vulgar comments at Plaintiff.

16. On or about February 10, 2021, Kimble approached Plaintiff and began yelling and swearing at Plaintiff in front of another officer. Plaintiff asked Kimble, "why am I the only person being addressed this way," to which Kimble responded, "Don't worry about me. You are the only person I am focusing on." Kimble yelled at Plaintiff in front of co-workers, screaming at him to "hurry up and get your ass out on the street, you do not need to stay in the fucking station."

17. Later that day, Plaintiff reported the incident to the Commander, who told Plaintiff that he would speak to Kimble.

18. On February 11, 2021, Plaintiff complained and reported the hostile and toxic work environment and adverse employment actions taken against him by Kimble and the City to the Chicago Police Department Bureau of Internal Affairs, all of which were in retaliation for Plaintiff having complained of and refused to participate in Kimble and the City's unlawful quota requirements.

19. Specifically, Plaintiff reported to the Bureau of Internal Affairs that Kimble repeatedly demanded that Plaintiff and other police officers engage in a specified number of activities during a specified period, including the requirement that officers issue a minimum number of traffic citations. Plaintiff also reported to the Bureau of Internal Affairs that Kimble repeatedly threatened Plaintiff and other police officers that Kimble and the City would retaliate against Plaintiff and other officers who failed to satisfy the quotas. At all times, Plaintiff reasonably believed Kimble and the City's mandatory quota requirements were illegal under Illinois state law.

20. After Plaintiff reported Kimble's unlawful mandatory quota requirements and retaliation to the Bureau of Internal Affairs, Kimble further retaliated against Plaintiff by changing Plaintiff's work assignments daily for the sole purpose of harassing and punishing Plaintiff and interfering with the terms and conditions of employment. Kimble also continued to require Plaintiff to start at 8:00 a.m. and was informed by Chicago Police Department personnel that Kimble had informed staff that "Officer Lindsay will not be assigned to any assignment that starts at 0600 as long as [Kimble] is the Watch Operation's LT".

5

21. On or about March 31, 2021, during roll call, Kimble, while staring at Plaintiff in an aggressive manner, stated "I know that some people have been reporting me" to the Bureau of Internal Affairs, the Commander, the Union and others. Kimble then stated:

> But I don't give a shit about anyone going to any of those people because there is absolutely nothing anyone can do to me. I am untouchable and I have 30 years on the job. If you don't like it you can bid the fuck out of the district. ***If you want to tell what I am doing and my behavior, I will show you what happens to people who tell on me.***

22. From April 2021 through October 1, 2021, Plaintiff went on medical leave due to the toxic, hostile, aggressive and retaliatory work environment as a result of Plaintiff's reporting of Kimble's unlawful mandatory quota requirements and refusal to follow Kimble's instructions to abide by the illegal mandatory quote requirements. While on leave, Plaintiff was required to participate in therapy as a result of the toxic and hostile work environment perpetrated by Kimble.

23. On October 2, 2021, when Plaintiff returned from Stress Leave, Plaintiff remained assigned to the less desirable 8:00 a.m. start time and was told by the desk personnel that Kimble had stated that Plaintiff "will not be assigned to any assignment that starts at 6:00 a.m. as long as [Kimble] is the Watch Operation's Lt."

24. On December 15, 2021, Plaintiff made a retail theft arrest. Upon completion of the paperwork for the arrest in the 5th District, Plaintiff and partner Officer Griffin were informed by Kimble that he was not going to approve charges for that retail theft arrest. Plaintiff and Officer Griffin informed Kimble that they had probable cause for that arrest and showed Kimble the Illinois retail theft statute from the Illinois Compiled Statutes. Kimble responded to Plaintiff and Officer Griffin, stating that he "did not give a fuck about what that book said." Plaintiff and Officer Griffin continued to process the arrest for other charges and notated Kimble's improper denial of the charge for retail theft.

25. On or about December 4, 2021, Plaintiff signed up to work overtime on December 5, 2021. Kimble approved every other officer's request to work overtime except Plaintiff. Kimble provided no explanation or justification for denying Plaintiff's routine request to work overtime while at the same time approving every other officer's overtime request.

26. In December 2021, while on a previously approved vacation out of the country, Plaintiff received an e-mail from the Chicago Police Department stating that individuals in his vacation group would not receive any vacation extensions. Plaintiff contacted a Lieutenant to inform him that Plaintiff was out of the country, that flights had been canceled due to the weather and that Plaintiff would not be able to return to work by December 26, 2021. Plaintiff was told that no extension would be permitted, and that he would be placed in a no pay status after 72 hours.

27. On January 5, 2022, Plaintiff returned to work and was informed that several individuals in his same vacation group had requested vacation extensions, which were granted, and that Plaintiff was the only person in his group whose vacation extension request was denied.

28. Plaintiff was placed in "no pay" status for the days he requested his vacation extension, which resulted in him being docked several thousand dollars in earned compensation. Plaintiff notified his union representative of the City's unlawful conduct, and grievance was submitted on Plaintiff's behalf.

29. On January 18, 2022, Kimble asked to speak with Plaintiff regarding his productivity. During that discussion, Kimble falsely implied that Plaintiff lied about the activity he notated while working the overtime shift, despite the fact that it was all noted on the computer system. Plaintiff explained to Kimble that all of the activity was notated in the computer and asked Kimble to review Plaintiff's notes in the computer.

30. On February 12, 2022, Kimble entered the Roll Call room in an aggressive manner, with his fist clenched, approaching the union representative. Kimble positioned himself just inches away from the union representative's face and begin yelling, swearing, and berating the union representative in front of several officers in Roll Call, including Plaintiff. The union representative raised his hands in the air, stepped back, and sought to de-escalate and avoid any confrontation with Kimble. Kimble continued yelling, swearing and ranting while giving the Roll Call, and became increasingly belligerent. While starring at the union representative and looking in his direction, Kimble threw a chair across the floor in a fit of anger. Kimble then informed the union representative that he could no longer have his union meeting with the officers in the Roll Call room and that "everyone needed to get the fuck on the street."

31. On February 15, 2022, Plaintiff was informed that he and another officer had been requested to meet with the union lawyers to prepare a statement regarding the City's improper and unlawful implementation of mandatory quota requirements. While in route to meet with the union lawyers, Kimble called Plaintiff and demanded to know where he was going and what he would be doing there. Kimble also questioned where they were going to meet with the union lawyers and why. They informed Kimble of the location of the meeting and explained that they had the right to refuse to tell Kimble the reason for meeting with the union lawyers.

32. On February 18, 2022, Kimble denied Plaintiff's routine overtime request, without any legitimate basis. Kimble's denial of Plaintiff's request was in retaliation for Plaintiff's reporting of and refusal to participate in the Defendants' unlawful mandatory quota requirements.

33. On February 20, 2022, Kimble removed Plaintiff from his assigned car without any valid or legitimate basis to do so. Rather, Kimble's action was in retaliation for Plaintiff's

reporting and refusal to participate in the illegal mandatory quota requirements. Kimble notified Defendant's personnel that the decision was indefinite.

34. On or about February 28, 2022, Kimble further retaliated against Plaintiff by directing Plaintiff to perform certain tasks and jobs which prevented Plaintiff from attending roll call and receiving overtime assignments. Kimble knew that requiring Plaintiff to perform these tasks and jobs would prevent Plaintiff from attending roll call, and Kimble intentionally assigned Plaintiff these tasks and jobs so that Plaintiff would not be able to receive overtime assignments, all of which was in retaliation for Plaintiff's protected activity as described above.

35. In further retaliation against Plaintiff, Kimble subsequently falsely and maliciously caused Plaintiff to be subjected to potential discipline related to an incident dating back to October 2021. Kimble falsely accused Plaintiff and another officer of refusing to comply with Kimble's instruction to transport a severely injured suspect in custody from the University of Chicago hospital to the Cook County jail in Plaintiff's squad car, in direct violation of the suspect's rights and in violation of the City's and Chicago Police Department's orders and protocols. When Plaintiff informed Kimble that the suspect, who had just returned from surgery for a gunshot wound, required an ambulance or other appropriate medical transport, Kimble improperly and unlawfully directed Plaintiff to transport the injured suspect in a squad care.

36. Defendants also caused Plaintiff to be stripped of his police powers and placed on desk duty by falsely and maliciously subjecting Plaintiff to a sham disciplinary investigation, thereby making Plaintiff ineligible for overtime pay and other benefits, as well as lost income opportunities through work as a private security contractor, which continue to increase pending the outcome of the investigation.

37. Illinois law prohibits the City of Chicago and other municipalities from requiring police officers to issue a certain number of citations within a designated period.

38. Under Illinois law, it is also illegal for the City of Chicago to evaluate a police officer's performance by comparing the number of citations issued by officers to other officers performing the same job duties.

## COUNT I

### (Section 1983: First Amendment)

39. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

40. At all relevant times hereto, Kimble acted as an employee, supervisor, and policymaker with respect to the personnel and subdivisions to which he was assigned responsibility by the Chicago Police Department.

41. Plaintiff engaged in speech protected by the First Amendment to the United States Constitution when he (i) raised concerns regarding Defendants' unlawful mandatory quota requirements, (ii) refused to participate in or abide by the mandatory quota requirements, and (iii) disclosed the illegality of doing so to the Bureau of Internal Affairs and others City officials.

42. Plaintiff works for the City, resides in the City's territory, and pays taxes to the City. Plaintiff's speech was motivated by his status as a resident and taxpayer, as well as his job. Plaintiff's speech concerned matters which affected the City as a whole, and were not merely employee grievances.

43. As a result of Plaintiff's speech, Defendants' engaged in repeated unlawful retaliatory acts against Plaintiff as described more fully in the foregoing paragraphs.

10

44. Defendants have violated 42 U.S.C. § 1983 by retaliating against him for speaking on matters of public concern, *e.g.*, in that he spoke out about Defendants' unlawful conduct, not only for himself, but for other employees of the Chicago Police Department, and for those in the public impacted by the unlawful use of quotas in violation of Illinois law.

45. The Defendants' unlawful conduct violated Plaintiff's right to free association and/or free speech, as provided by the First and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

46. Defendants' unlawful conduct has caused Plaintiff to suffer compensable injury and harm as a result of the denial of rights guaranteed to him pursuant to the First and Fourteenth Amendments to the United States Constitution.

47. Defendants' unlawful conduct was committed under color of law and without justification, was intended and reasonably likely to deter Plaintiff from engaging in protected activity under the First Amendment and has in fact deterred Plaintiff from engaging in protected First Amendment activity.

48. Defendants caused Plaintiff to be stripped of his police powers and placed on desk duty by falsely and maliciously subjecting Plaintiff to a sham disciplinary investigation, thereby making Plaintiff ineligible for overtime pay and other benefits, as well as lost income opportunities through work as a private security contractor, which continue to increase pending the outcome of the investigation.

49. Defendants retaliated against Plaintiff in a manner that was intentional, willful, and malicious and/or in reckless indifference to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages where available by law.

50. The actions of the Defendants have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, including lost overtime pay and lost alternative income opportunities, and future pecuniary losses.

51. The conduct of Defendants in subjecting Plaintiff to discrimination and retaliation based on his reporting of the Defendants' unlawful mandatory quota requirements as set forth above was and became the custom and practice of the City.

52. Defendants undertook retaliatory action against Plaintiff sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights, and Defendants' actions were motivated by Plaintiff's protected speech.

## COUNT II

**(Violation of Illinois Whistleblower Act, 740 ILCS 174/1 *et. seq.*)**

53. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

54. The Illinois Whistleblower Act defines "employer" to mean, in relevant part, to include any "entity that has one or more employees in this State, including a political subdivision of the State; a unit of local government; . . . any authority including a department, division, bureau, board, commission, or other agency of these entities; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 ILCS 174/1.

55. The City is an employer under the Illinois Whistleblower Act because it is a unit of local government with one or more employees in Illinois, which includes the Chicago Police Department, a municipal law enforcement agency of the City.

56. Kimble is an employer as defined by the Illinois Whistleblower Act because he is employed by the Chicago Police Department as a Lieutenant responsible for supervising Plaintiff's unit and acted within the scope of his authority express or implied on behalf of the City and the Chicago Police Department in dealing with officers under his command such as Plaintiff.

57. The Illinois Whistleblower Act defines "employee" to mean, in relevant part, "any individual who is employed on a full-time, part-time, or contractual basis by an employer." *Id.* Plaintiff is an employee under the Illinois Whistleblower Act because he is employed by the City as an officer of the Chicago Police Department under the supervision of Kimble.

58. The Illinois Whistleblower Act prohibits an employer from retaliating against an employee based on the employee's (i) refusal to participate in illegal activity, or (ii) disclosure of illegal activity to a government agency. 740 ILCS 174/15, 20.

59. Section 10 of the Illinois Whistleblower Act provides that an "employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/10.

60. Section 15(a) of the Illinois Whistleblower Act provides that an "employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(a).

61. Section 15(b) provides that an "employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has

reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b).

62. The Illinois Whistleblower Act further provides, in relevant part, that an "employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, . . . " 740 ILCS 174/20.

63. Section 20.1 of the Illinois Whistleblower Act provides that any "other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1.

64. The Illinois Whistleblower Act prohibits employers from threatening "any employee with any act or omission if that act or omission would constitute retaliation against the employee under [the Illinois Whistleblower Act.]" 740 ILCS 174/20.2.

65. If an employer takes action against an employee in violation of Section 15 or 20 of the Illinois Whistleblower Act, the employee may bring a civil action against the employer under the Illinois Whistleblower Act to recover "all relief necessary to make the employee whole, including but not limited to the following, as appropriate: (1) reinstatement with the same seniority status that the employee would have had, but for the violation; (2) back pay, with interest; and (3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees." 740 ILCS 174/30.

66. Plaintiff disclosed to the City information regarding the unlawful mandatory quota policies and requirements implemented and enforced by Kimble and others, and Plaintiff had reasonable cause to believe such conduct was illegal.

67. As a result of Plaintiff's disclosure to the City of the illegality of the mandatory quota requirements and refusal to participate in such illegal activity, the City, through Kimble and others, retaliated against Plaintiff by subjecting him to less favorable terms and conditions of employment, harassment, aggression, diminished benefits, lost overtime pay, false disciplinary claims, and numerous other instances of negative treatment.

68. Defendants also caused Plaintiff to be stripped of his police powers and placed on desk duty by falsely and maliciously subjecting Plaintiff to a sham disciplinary investigation, thereby making Plaintiff ineligible for overtime pay and other benefits, as well as lost income opportunities through work as a private security contractor, which continue to increase pending the outcome of the investigation.

## COUNT III
### (Indemnification)

69. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

70. The acts or omissions alleged above to have been committed by Kimble were committed within the scope of his employment by the City as a Lieutenant of the Chicago Police Department and/or while acting as agents of the City.

71. The City is a public entity required to provide indemnity pursuant to 735 ILCS 10/9-102 and other applicable laws and ordinances for damages caused by the City's employees while acting within the scope of their employment or within their authorized agency.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that an award be issued in his favor providing the following relief:

A. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the United States and the State of Illinois;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An order directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory, retaliatory, and/or otherwise unlawful treatment of Plaintiff, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and economic damages, including, but not limited to, the loss of compensation, job security, and other benefits of employment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to Plaintiff's professional and personal reputation and loss of career fulfillment;

F. An award of damages for any and all other monetary and non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff respectfully requests a trial by jury on all counts.

Respectfully submitted,

*/s/ Matthew P. Tyrrell*
One of the attorneys for Plaintiff

Mark A. Flessner
mark.flessner@sfbbg.com
Matthew P. Tyrrell
matthew.tyrrell@sfbbg.com
**SCHOENBERG FINKEL BEEDERMAN BELL GLAZER LLC**
300 S. Wacker Drive, Suite 1500
Chicago, IL 60606
(312) 648-2300